Filed 7/16/13  Cobaugh v. Reiter CA6
Opinion following order vacating prior opinion
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SALLY COBAUGH,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PETER REITER,<br><br>    Defendant and Appellant. | H038831<br>(Santa Cruz County<br>Super. Ct. No. CV166711) |

Appellant Peter Reiter was a sole proprietor of a residential landscaping company. In the early 2000's, he began to do work for Eve Kragneness, an 80-year-old widow who lived with her blind son, Jim Krageness.  A personal relationship developed between the appellant and the Kragnesesses and the scope of the work he did for the family increased. This work continued until Eve's death in 2006. Often Eve paid appellant much more than what he would have otherwise charged for his work.  The amount of the checks written to appellant increased throughout 2004 and reached their highest point in May 2005.  In total, Reiter cashed checks totaling $544,382.  At some point, a bank official, concerned about the frequency and amount of checks to appellant, reported the payments to the authorities.  This led to an investigation by Adult Protective Services into the transactions and relationship between the appellant and the Kragnesesses.  The investigating officer concluded that the payments were not coerced and were being made voluntarily.  After

his mother's death, Jim became the sole administrator of his mother's estate. Three years after her death, Jim died unexpectedly.

Respondent Sally Cobaugh, Jim's cousin and the executor of his estate, filed this action for financial abuse of an elder adult and of a dependent adult pursuant to Welfare and Institutions Code section 15610.30. At trial, she argued that the size and frequency of the checks, by themselves, evidenced some sort of mental failing of both Kragenesses and that appellant must have been aware of their feelings of dependence on him; that appellant failed to make any inquiries as to whether the large amounts of money coming to him were financially destructive to the Kragnesesses; and that anything other than refusing such large checks constituted abuse of both Eve and Jim. Respondent prevailed at trial and the trial court awarded compensatory damages to the estate in the amount of $564,576, punitive damages in the amount of $200,000, attorney fees in the amount of $432,777.50 and costs in the amount of $22,315.04. This appeal ensued.

The parties have now entered into a settlement which resolves the issues raised in the appeal. One of the conditions of settlement is that the parties jointly seek a reversal of the trial court's judgment. The parties have filed a joint motion for stipulated reversal of the judgment against appellant. The reason that the parties seek a stipulated reversal, as outlined in the motion and declaration in support of the motion for stipulated reversal, is that they will both benefit from resolving the matter without the need to pursue an appellate remedy, a possible subsequent retrial and the possible debtor-collection process. A stipulated reversal, they contend, will reduce the financial burden on both parties, and increase the amount respondent can ultimately recover from appellant's limited resources.

The parties' motion and joint declaration supports the conclusion that a stipulated reversal is appropriate under the facts of this case and the law. (See Code Civ. Proc., § 128, subd. (a)(8).) For the reasons stated in the joint motion for stipulated for reversal, including the assurance that appellant will take responsibility for his actions by

compensating the estate for any wrongdoing in an amount agreed to by the parties, the court finds that there is no possibility that the interests of nonparties or the public will be adversely affected by the reversal.

This court further finds that the parties' grounds for requesting reversal are reasonable, allowing both parties to achieve the maximum financial and emotional benefit from a final, mutually agreed upon resolution of all issues between the parties, without the need for further protracted litigation. Those grounds outweigh the erosion of public trust that may result from the nullification of a judgment, and outweigh the risk that the availability of a stipulated reversal will reduce the incentive for pretrial settlement.

### DISPOSITION

The judgment is reversed pursuant to the stipulation of the parties. Each party to bear its own attorney fees and costs on appeal. The remittitur shall issue forthwith.

_____
RUSHING, P.J.

WE CONCUR:


_____
PREMO, J.


_____
ELIA, J.